# SUPREME COURT OF THE UNITED STATES

## KEITH THARPE *v.* ERIC SELLERS, WARDEN

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 17–6075.   Decided January 8, 2018

PER CURIAM.

Petitioner Keith Tharpe moved to reopen his federal habeas corpus proceedings regarding his claim that the Georgia jury that convicted him of murder included a white juror, Barney Gattie, who was biased against Tharpe because he is black.  See Fed. Rule Civ. Proc. 60(b)(6).  The District Court denied the motion on the ground that, among other things, Tharpe's claim was procedurally defaulted in state court.  The District Court also noted that Tharpe could not overcome that procedural default because he had failed to produce any clear and convincing evidence contradicting the state court's determination that Gattie's presence on the jury did not prejudice him.  See *Tharpe* v. *Warden*, No. 5:10–cv–433 (MD Ga., Sept. 5, 2017), App. B to Pet. for Cert. 19.

Tharpe sought a certificate of appealability (COA).  The Eleventh Circuit denied his COA application after deciding that jurists of reason could not dispute that the District Court's procedural ruling was correct.  See *Tharpe* v. *Warden*, 2017 WL 4250413, *3 (Sept. 21, 2017).  The Eleventh Circuit's decision, as we read it, was based solely on its conclusion, rooted in the state court's factfinding, that Tharpe had failed to show prejudice in connection with his procedurally defaulted claim, *i.e.*, that Tharpe had "failed to demonstrate that Barney Gattie's behavior 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Ibid.* (quoting *Brecht* v. *Abrahamson*, 507 U. S. 619, 637 (1993)).

Our review of the record compels a different conclusion. The state court's prejudice determination rested on its finding that Gattie's vote to impose the death penalty was not based on Tharpe's race. See *Tharpe* v. *Warden*, No. 93–cv–144 (Super. Ct. Butts Cty., Ga., Dec. 1, 2008), App. F to Pet. for Cert. 102. And that factual determination is binding on federal courts, including this Court, in the absence of clear and convincing evidence to the contrary. See 28 U. S. C. §2254(e)(1). Here, however, Tharpe produced a sworn affidavit, signed by Gattie, indicating Gattie's view that "there are two types of black people: 1. Black folks and 2. Niggers"; that Tharpe, "who wasn't in the 'good' black folks category in my book, should get the electric chair for what he did"; that "[s]ome of the jurors voted for death because they felt Tharpe should be an example to other blacks who kill blacks, but that wasn't my reason"; and that, "[a]fter studying the Bible, I have wondered if black people even have souls." App. B to Pet. for Cert. 15–16 (internal quotation marks omitted). Gattie's remarkable affidavit—which he never retracted—presents a strong factual basis for the argument that Tharpe's race affected Gattie's vote for a death verdict. At the very least, jurists of reason could debate whether Tharpe has shown by clear and convincing evidence that the state court's factual determination was wrong. The Eleventh Circuit erred when it concluded otherwise.

The question of prejudice—the ground on which the Eleventh Circuit chose to dispose of Tharpe's application—is not the only question relevant to the broader inquiry whether Tharpe should receive a COA. The District Court denied Tharpe's Rule 60(b) motion on several grounds not addressed by the Eleventh Circuit. We express no view of those issues here. In light of the standard for relief from judgment under Rule 60(b)(6), which is available only in " 'extraordinary circumstances,' " *Gonzalez* v. *Crosby*, 545 U. S. 524, 536 (2005), Tharpe faces a high bar in showing

Per Curiam

that jurists of reason could disagree whether the District Court abused its discretion in denying his motion. It may be that, at the end of the day, Tharpe should not receive a COA. And review of the denial of a COA is certainly not limited to grounds expressly addressed by the court whose decision is under review. But on the unusual facts of this case, the Court of Appeals' review should not have rested on the ground that it was indisputable among reasonable jurists that Gattie's service on the jury did not prejudice Tharpe.

We therefore grant Tharpe's motion to proceed *in forma pauperis*, grant the petition for certiorari, vacate the judgment of the Court of Appeals, and remand the case for further consideration of the question whether Tharpe is entitled to a COA.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

## KEITH THARPE *v.* ERIC SELLERS, WARDEN

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 17–6075.   Decided January 8, 2018

JUSTICE THOMAS, with whom JUSTICE ALITO and JUSTICE GORSUCH join, dissenting.

If bad facts make bad law, then "unusual facts" inspire unusual decisions. *Ante*, at 3.  In its brief *per curiam* opinion, the Court misreads a lower court's opinion to find an error that is not there, and then refuses to entertain alternative grounds for affirmance.  The Court does this to accomplish little more than a do-over in the Court of Appeals: As it concedes, petitioner Keith Tharpe faces a "high bar" on remand to obtain even a certificate of appealability (COA).  *Ante*, at 2.

One might wonder why the Court engages in this pointless exercise.  The only possible explanation is its concern with the "unusual facts" of this case, specifically a juror affidavit that expresses racist opinions about blacks.  The opinions in the affidavit are certainly odious.  But their odiousness does not excuse us from doing our job correctly, or allow us to pretend that the lower courts have not done theirs.

The responsibility of courts is to decide cases, both usual and unusual, by neutrally applying the law.  The law reflects society's considered judgments about the balance of competing interests, and we must respect those judgments.  In bending the rules here to show its concern for a black capital inmate, the Court must think it is showing its concern for racial justice.  It is not.  Its summary vacatur will not stop Tharpe's execution or erase the "unusual fac[t]" of the affidavit.  It will only delay justice for Jaquelin Freeman, who was also black, who is ignored by the

majority, and who was murdered by Tharpe 27 years ago. I respectfully dissent.

## I

The Court's terse opinion tells the reader that this case involves a petitioner, a juror, an affidavit, and a prejudice determination. But it involves much more than that. This case also has a victim, a second affidavit, numerous depositions, factfinding by a state court, and several decisions from federal judges that provide multiple grounds for denying a COA. I will briefly provide this omitted context.

## A

Keith Tharpe's wife, Migrisus, left him in 1990. Despite a no-contact order, Tharpe called her and told her that if she wanted to "'play dirty'" he would show her "'what dirty was.'" *Tharpe* v. *Warden*, 834 F. 3d 1323, 1325 (CA11 2016). The next morning, Tharpe ambushed his wife and her sister, Jaquelin Freeman, as they drove to work, pulling his truck in front of their car and forcing them to stop. Tharpe aimed a shotgun at the car and ordered his wife to get into his truck. He then told Freeman that he was going to "'f— [her] up'" and took her to the rear of his truck. *Ibid.* Tharpe shot Freeman, rolled her body into a ditch, reloaded, and shot her again, killing her. After murdering Freeman, Tharpe kidnaped and raped his wife, leaving Freeman's body lying in the ditch. Freeman's husband found her a short time later, while driving their children to school.

A jury convicted Tharpe of malice murder and two counts of aggravated kidnaping. After hearing the evidence, the jury needed less than two hours to return a unanimous sentence of death. As aggravating factors, the jury found that Tharpe murdered Freeman while committing two other capital felonies—the aggravated kidnapings of his wife and Freeman—and that the murder was outra-

geously or wantonly vile, horrible, or inhuman.

## B

More than seven years after his trial, Tharpe's lawyers interviewed one of his jurors, Barney Gattie. The resulting affidavit stated that Gattie knew Freeman, and that her family was "what [he] would call a nice [b]lack family." *Tharpe* v. *Warden*, No. 5:10–cv–433 (MD Ga., Sept. 5, 2017), App. B to Pet. for Cert. 15. The affidavit continued that, in Gattie's view, "there are two types of black people: 1. Black folks and 2. Niggers." *Ibid.* Tharpe "wasn't in the 'good' black folks category," according to the affidavit, and if Freeman had been "the type Tharpe is, then picking between life and death for Tharpe wouldn't have mattered so much." *Id.*, at 16. But because Freeman and her family were "good black folks," the affidavit continued, Gattie thought Tharpe "should get the electric chair for what he did." *Ibid.* Gattie's affidavit went on to explain that "[a]fter studying the Bible," he had "wondered if black people even have souls." *Ibid.* The affidavit also noted that some of the other jurors "wanted blacks to know they weren't going to get away with killing each other." *Ibid.*

A couple of days later, the State obtained another affidavit from Gattie. In that second affidavit, Gattie stated that he "did not vote to impose the death penalty because [Tharpe] was a black man," but instead because the evidence presented at trial justified it and because Tharpe showed no remorse. Record in No. 5:10–cv–433 (MD Ga., June 21, 2017) (Record), Doc. 77–3, p. 2. The affidavit explained that Gattie had consumed "seven or more beers" on the afternoon he signed the first affidavit. *Ibid.* Although he had signed it, he "never swore to [it] nor was [he] ever asked if [the] statement was true and accurate." *Id.*, at 3. He also attested that many of the statements in the first affidavit "were taken out of context and simply not accurate." *Ibid.* And he felt that the lawyers who took it

"were deceiving and misrepresented what they stood for." *Id.,* at 5.

A state postconviction court presided over Gattie's deposition. Gattie again testified that, although he signed the affidavit, he did not swear to its contents. Gattie also testified that when he signed the affidavit he had consumed "[m]aybe a 12 pack, [and] a few drinks of whiskey, over the period of the day." *Id.,* Doc. 15–8, p. 80. Tharpe's lawyers did not question Gattie about the contents of his first affidavit at the deposition. They instead spent much of the deposition asking Gattie unrelated questions about race, which the state court ruled irrelevant—like whether he was familiar with Uncle Tom's Cabin or whether his granddaughter would play with a black doll. The lawyers' failure to address the contents of Gattie's first affidavit troubled the state court. Just before it permitted Gattie to leave, the court advised Tharpe's lawyers that it might "totally discoun[t]" Gattie's first affidavit, and it again invited them to ask Gattie questions about its contents. *Id.,* at 105. Tharpe's lawyers declined the opportunity.

The state court also heard deposition testimony from ten of Tharpe's other jurors and received an affidavit from the eleventh. None of the jurors, two of whom were black, corroborated the statements in Gattie's first affidavit about how some of the jurors had considered race. The ten jurors who testified all said that race played no role in the jury's deliberations. The eleventh juror did not mention any consideration of race either.

## C

Tharpe sought state postconviction relief. One of his claims was that "improper racial animus . . . infected the deliberations of the jury." *Tharpe* v. *Warden,* 2017 WL 4250413, \*1 (CA11, Sept. 21, 2017).

The state court rejected this claim for two reasons. First, Tharpe could not prove juror misconduct because

Georgia law did not allow parties to impeach a jury verdict with post-trial testimony from jurors. *Tharpe* v. *Warden*, No. 93–cv–144 (Super. Ct. Butts Cty., Ga., Dec. 1, 2008), App. F to Pet. for Cert. 99–101. Second, Tharpe had procedurally defaulted his claim because he had failed to raise it on direct appeal, and he could not establish cause and prejudice to overcome that default. *Id.*, at 102. Tharpe's allegation of ineffective assistance of counsel was insufficient to establish cause because he had "failed to establish the requisite deficiency or prejudice." *Ibid.* And Tharpe failed to establish prejudice because the state court credited Gattie's testimony that he had not relied on race when voting to sentence Tharpe. *Id.,* at 102–103.

D

Tharpe then raised his juror-bias claim in a federal petition for a writ of habeas corpus. The United States District Court for the Middle District of Georgia denied his claim as procedurally defaulted. The District Court acknowledged that ineffective assistance of counsel can provide cause to overcome a procedural default, but it explained that Tharpe "fail[ed] to provide any details regarding this allegation." 2017 WL 4250413, *2. The District Court concluded that Tharpe "ha[d] not established that his counsels' ineffectiveness constituted cause to overcome the procedural defaul[t]" and that he "failed to show actual prejudice." *Ibid.*

Tharpe did not seek a COA on his juror-bias claim. The United States Court of Appeals for the Eleventh Circuit affirmed the District Court's decision, *Tharpe*, 834 F. 3d 1323, and this Court denied certiorari, *Tharpe* v. *Sellers*, 582 U. S. \_\_\_ (2017).

In June 2017, Tharpe moved to reopen his federal habeas proceedings under Federal Rule of Civil Procedure 60(b). He pointed to this Court's recent decisions in *Buck* v. *Davis*, 580 U. S. \_\_\_ (2017), and *Pena-Rodriguez* v.

*Colorado*, 580 U. S. ___ (2017), as extraordinary circumstances that entitled him to relief. According to Tharpe, *Buck* established that extraordinary circumstances are present when a defendant was sentenced due to his race and new law provides an opportunity to consider the merits of his previously defaulted, race-based sentencing claim. *Pena-Rodriguez* supplied that new law, Tharpe argued, because it held that a state no-impeachment rule must yield when there is a "clear statement that indicates [a juror] relied on racial stereotypes or animus to convict a criminal defendant." 580 U. S., at ___ (slip op., at 17).

The District Court denied Tharpe's motion. It first explained that *Pena-Rodriguez* announced a new procedural rule that does not apply retroactively on federal collateral review. App. B to Pet. for Cert. 6–14. It alternatively deferred to the state court's finding that Tharpe could not prove cause or prejudice to overcome his procedural default. *Id.*, at 18–21. After the depositions of Gattie and ten other jurors, the state court credited Gattie's testimony that he did not vote for death based on race. *Id.*, at 21. The District Court deferred to that credibility determination, and nothing in *Pena-Rodriguez* undermined that determination. App. B to Pet. for Cert. 19–21.

The Eleventh Circuit denied a COA. It explained that the District Court had concluded in its first decision that Tharpe failed to prove cause and prejudice. 2017 WL 4250413, *2. The District Court had later rejected Tharpe's Rule 60(b) motion both because *Pena-Rodriguez* was not retroactively applicable on federal collateral review and because it "presumed the correctness" of the state court's finding that Tharpe failed to "'establish cause and prejudice.'" 2017 WL 4250413, *2. The Eleventh Circuit then offered two reasons why Tharpe was not entitled to a COA. First, Tharpe had not "'made a substantial showing of the denial of a constitutional right.'"

*Id.*, at \*3 (quoting 28 U. S. C. §2253(c)(2)). "As the [state court] and the District Court found, Tharpe failed to demonstrate that Barney Gattie's behavior 'had substantial and injurious effect or influence in determining the jury's verdict.'" 2017 WL 4250413, \*3 (quoting *Brecht* v. *Abrahamson*, 507 U. S. 619, 637 (1993)). "Nor," the Eleventh Circuit continued, "has Tharpe shown that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" 2017 WL 4250413, \*3 (quoting *Slack* v. *McDaniel*, 529 U. S. 473, 484 (2000)).[1]

Shortly before his execution, Tharpe filed a petition for a writ of certiorari and a stay application with this Court. We issued a stay.

## II

To obtain a COA, Tharpe must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*, at 484. The Court is not willing to say that Tharpe can satisfy this standard. See *ante*, at 3 ("It may be that, at the end of the day, Tharpe should not receive a COA"). Instead, its opinion makes two moves. First, it "read[s]" the decision below as resting "solely" on Tharpe's "fail[ure] to show prejudice" to overcome his procedural default. *Ante*, at 1. It does not read the decision as reaching cause, and it declines to consider that or any other alternative reason to affirm the Eleventh Circuit. See *ante*, at 1–2. Second, the Court holds, contrary to the Eleventh Circuit, that jurists of reason could debate whether Tharpe has proven prejudice. See *ante*, at 2. Neither of the Court's moves is justified.

—————

[1] The Eleventh Circuit also held that Tharpe had not exhausted his *Pena-Rodriguez* claim in state court. 2017 WL 4250413, \*4.

## A

### 1

The majority misreads the decision below as resting "solely" on prejudice. See *ante,* at 1. The Eleventh Circuit addressed cause as well.

The Eleventh Circuit first held that Tharpe had failed to make a "'substantial showing of the denial of a constitutional right,'" explaining that he had "failed to demonstrate that . . . Gattie's behavior 'had substantial and injurious effect or influence in determining the jury's verdict.'" 2017 WL 4250413, \*3 (quoting *Brecht*, *supra*, at 637). Then the Eleventh Circuit alternatively held that Tharpe had not "shown that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" 2017 WL 4250413, \*3 (quoting *Slack*, *supra*, at 484). The "procedural ruling" of the District Court rested on both cause and prejudice—as the Eleventh Circuit explained earlier in its opinion, quoting the District Court at length. See 2017 WL 4250413, \*2. Indeed, neither party suggests that the Eleventh Circuit's decision did not reach cause, and both parties briefed the issue to this Court. See Brief in Opposition 16–17; Reply Brief 7–8. The Court's reading of the decision below is untenable.

Even if its reading were tenable, the Court does not explain why the strong medicine of a summary disposition is warranted here. Summary decisions are "rare" and "usually reserved by this Court for situations in which . . . the decision below is clearly in error." *Schweiker* v. *Hansen*, 450 U. S. 785, 791 (1981) (Marshall, J., dissenting). The majority's reading of the decision below is not the better one, much less the clearly correct one. By adopting the least charitable reading of the Eleventh Circuit's decision, the majority "disrespects the judges of the courts of appeals, who are appointed and confirmed as we are." *Wellons* v. *Hall*, 558 U. S. 220, 228 (2010) (Scalia, J., dissenting). This Court should not "vacate and send back

their authorized judgments for inconsequential imperfection of opinion—as though we were schoolmasters grading their homework." *Ibid.* In fact, "[a]n appropriately self-respecting response to today's summary vacatur would be summary reissuance of the same opinion," *ibid.,* with a sentence clarifying that the Eleventh Circuit agrees with the District Court's decision on cause.

2

Putting aside its misreading of the decision below, the Court inexplicably declines to consider alternative grounds for affirmance. The Court acknowledges that our review "is certainly not limited to grounds expressly addressed by the court whose decision is under review." *Ante,* at 3. But the Court does not explain why it nonetheless limits itself to the question of prejudice. The Court's self-imposed limitation is inexcusable given that Tharpe's collateral challenges to his sentence have lasted 24 years, the Court's failure to consider alternative grounds has halted an imminent execution, the alternative grounds were reached below, several of them were briefed here, and many of them are obviously correct. In fact, the District Court identified two grounds for denying Tharpe relief that no reasonable jurist could debate.

First, no reasonable jurist could argue that *Pena-Rodriguez* applies retroactively on collateral review. *Pena-Rodriguez* established a new rule: The opinion states that it is answering a question "left open" by this Court's earlier precedents. 580 U. S., at \_\_\_ (slip op., at 13). A new rule does not apply retroactively unless it is substantive or a "watershed rul[e] of criminal procedure." *Teague* v. *Lane,* 489 U. S. 288, 311 (1989) (plurality opinion). Since *Pena-Rodriguez* permits a trial court "to consider [certain] evidence," 580 U. S., at \_\_\_ (slip op., at 17), and does not "alte[r] the range of conduct or the class of persons that the law punishes," *Schriro* v. *Summerlin,* 542 U. S. 348,

353 (2004), it cannot be a substantive rule.[2]  And Tharpe
does not even attempt to argue that *Pena-Rodriguez* estab-
lished a watershed rule of criminal procedure—a class of
rules that is so "narrow" that it is "'unlikely that any has
yet to emerge.'" *Schriro, supra,* at 352 (quoting *Tyler* v.
*Cain*, 533 U. S. 656, 667, n. 7 (2001); alterations omitted).
Nor could he.  Not even the right to have a jury decide a
defendant's eligibility for death counts as a watershed rule
of criminal procedure.  *Schriro, supra*, at 355–358.[3]

Second, no reasonable jurist could argue that Tharpe
demonstrated cause for his procedural default.  The only
cause that Tharpe raised in state court was ineffective
assistance of counsel.  The state court rejected this claim
because Tharpe presented only a conclusory allegation to
support it.  No reasonable jurist could debate that deci-
sion.  Nor could a reasonable jurist debate the cause ar-
gument that Tharpe raises here.  In his reply brief in
support of certiorari in this Court, Tharpe argues that he

———————

[2] Moreover, because the state court considered Tharpe's evidence of
racial bias anyway, despite Georgia's no-impeachment rule, no reason-
able jurist could argue that *Pena-Rodriguez* presents an extraordinary
circumstance that entitles Tharpe to reopen his judgment under Rule
60(b).  He has already received the benefit of the rule announced in
*Pena-Rodriguez.*

[3] Even if Tharpe could show that *Pena-Rodriguez* is retroactive under
*Teague* and could overcome his procedural default, no reasonable jurist
could argue that he has stated a valid juror-bias claim on the merits.
The state court concluded that his claim failed in the absence of any
admissible evidence to support it.  See *Tharpe* v. *Warden*, No. 93–cv–
144 (Super. Ct. Butts Cty., Ga., Dec. 1, 2008), App. F to Pet. for Cert.
102.  To obtain federal habeas relief, Tharpe must show that this
merits decision "was contrary to, or involved an unreasonable applica-
tion of, clearly established Federal law, as determined by the Supreme
Court of the United States."  28 U. S. C. §2254(d)(1).  Since the state
court issued its decision nearly a decade before *Pena-Rodriguez*, no
reasonable jurist could argue that the state court's decision was con-
trary to clearly established law at "the time the state court render[ed]
its decision."  *Cullen* v. *Pinholster*, 563 U. S. 170, 182 (2011) (internal
quotation marks omitted).

did not have to raise his claim of juror bias on direct appeal. Reply Brief 7–8. But Tharpe never raised this argument in state court, so the state court did not err in failing to accept it. Nor did the District Court abuse its discretion in failing to address it, since Tharpe merely mentioned it in a footnote in his reply brief where he was explaining the state court's decision. And even if Tharpe's description of Georgia law is correct and relevant in a federal habeas proceeding, he offers no explanation for why he waited seven years after his trial to obtain Gattie's affidavit. See *Fults* v. *GDCP Warden*, 764 F. 3d 1311, 1317 (CA11 2014). In short, Tharpe has not offered a viable argument on cause in any court.

B

On the one issue it does address—prejudice—the Court falters again. Its conclusion that reasonable jurists could debate prejudice plows through three levels of deference. First, it ignores the deference that appellate courts must give to trial courts' findings on questions of juror bias. See *Skilling* v. *United States*, 561 U. S. 358, 396 (2010) ("In reviewing claims [of juror bias], the deference due to district courts is at its pinnacle: 'A trial court's findings of juror impartiality may be overturned only for manifest error'" (quoting *Mu'Min* v. *Virginia*, 500 U. S. 415, 428 (1991))). Then, it ignores the deference that federal habeas courts must give to state courts' factual findings. See 28 U. S. C. §2254(e)(1). Finally, it ignores the deference that federal appellate courts must give to federal district courts' discretionary decisions under Rule 60(b). See *Browder* v. *Director, Dept. of Corrections of Ill.*, 434 U. S. 257, 263, n. 7 (1978).

With all this deference, no reasonable jurist could debate the question of prejudice. The state court's finding that Tharpe "failed to show that any alleged racial bias of Mr. Gattie's was the basis for sentencing" him, App. F to

Pet. for Cert. 102, was supported by ample evidence. Gattie testified in his second affidavit that he did not impose a death sentence because of Tharpe's race. He also denied having sworn to the first affidavit and explained that he had consumed a substantial amount of alcohol on the day he signed it. Gattie's testimony was consistent with the testimony of the other ten jurors deposed in front of the trial court, each of whom testified that they did not consider race and that race was not discussed during their deliberations. To be sure, there was some evidence cutting the other way—most notably, Gattie's first affidavit. But the state court heard all of the evidence, saw the witnesses' demeanor, and decided to credit Gattie's testimony that he did not vote for the death penalty because of Tharpe's race. Even if we were reviewing the state court directly, its finding would be entitled to substantial deference. See *Skilling*, *supra*, at 396.

But we are not reviewing the state court directly. Instead, the relevant question is whether a reasonable jurist could argue that the District Court abused its discretion by concluding that the state court's decision to credit Gattie's testimony has not been rebutted by clear and convincing evidence. Even if "[r]easonable minds reviewing the record might disagree about" the evidence, "on habeas review that does not suffice to supersede the [state] court's credibility determination." *Rice* v. *Collins*, 546 U. S. 333, 341–342 (2006). And even if we might have made a different call, abuse-of-discretion review means we cannot "substitute [our] judgment for that of the district court." *Horne* v. *Flores*, 557 U. S. 433, 493 (2009) (BREYER, J., dissenting). Under these standards, no reasonable jurist could argue that Tharpe rebutted the state court's decision by clear and convincing evidence, much less that the District Court's deference to the state court's credibility determination was an abuse of discretion.

## III

The Court is cognizant of the weakness of Tharpe's claims. It openly anticipates that he will not be able to obtain a COA, which makes sense given the insurmountable barriers he faces on remand. Moreover, the Court's preliminary decision that reasonable jurists could debate prejudice says little about how a court of appeals could ever rule in Tharpe's favor on the merits of that question, given the multiple levels of deference that apply. At most, then, the Court's decision merely delays Tharpe's inevitable execution.

The Court tries to justify its decision "on the unusual facts of this case." *Ante,* at 3. But there is nothing unusual about deferring to a district court's decision to defer to a state court's credibility findings. This case involves a mine-run denial of a COA by a lower court on the eve of an execution, one that this Court routinely denies certiorari to address.

Today's decision can be explained only by the "unusual fac[t]" of Gattie's first affidavit. *Ibid.* The Court must be disturbed by the racist rhetoric in that affidavit, and must want to do something about it. But the Court's decision is no profile in moral courage. By remanding this case to the Court of Appeals for a useless do-over, the Court is not doing Tharpe any favors. And its unusual disposition of his case callously delays justice for Jaquelin Freeman, the black woman who was brutally murdered by Tharpe 27 years ago. Because this Court should not be in the business of ceremonial handwringing, I respectfully dissent.