**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 20-2844

———————————

MATTHEW S. BECKER,
Appellant

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; THE DISTRICT ATTORNEY OF THE
COUNTY OF LANCASTER; THE ATTORNEY GENERAL
OF THE STATE OF PENNSYLVANIA

———————————

Related to D.C. No. 5-19-cv-01032
United States District Court
for the Eastern District of Pennsylvania
District Judge: Honorable Mark A. Kearney

———————————

Argued on November 10, 2021

Before: HARDIMAN, MATEY, and SCIRICA, *Circuit
Judges*

(Filed: March 21, 2022)

Edward J. Rymsza, III [Argued]
Miele & Rymsza
125 East Third Street
Williamsport, PA 17701

    *Counsel for Appellant*

Heather L. Adams
Travis S. Anderson [Argued]
Lancaster County Office of District Attorney
50 North Duke Street
Lancaster, PA 17602

    *Counsel for Appellees*

———————————

OPINION OF THE COURT

———————————

HARDIMAN, *Circuit Judge.*

Matthew Scott Becker seeks a certificate of appealability (COA) to challenge the District Court's order denying his habeas petition. In 2013, a jury convicted Becker of murder in the Lancaster County Court of Common Pleas. After Becker's direct and collateral appeals in state court were unsuccessful, he petitioned for a writ of habeas corpus in federal court. Applying the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, the District Court deferred to the state trial court's factual findings, denied Becker's habeas petition, and denied a COA. We do likewise. When deference to state court rulings under AEDPA will apply

to the merits of a petitioner's habeas claim, such deference likewise applies to our decision whether to issue a COA under 28 U.S.C. § 2253(c). Because Becker cannot meet that standard, we will deny his request for a COA and dismiss his appeal for lack of jurisdiction.

I

Under AEDPA, a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a petitioner to show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). At this stage, we limit our examination of the claim to a "threshold inquiry into the underlying merit[s]," *id.* at 327; we ask "only if the District Court's decision was debatable," *id.* at 348.

AEDPA requires federal courts to give due regard to state court rulings. Where the state court has adjudicated the merits of a petitioner's habeas claims, federal habeas relief is available only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The statute does not state whether this deferential standard applies only to the merits of a habeas claim or also to the question of whether a COA should issue. *See id.*

3

The Supreme Court in *Miller-El* did not explicitly determine whether federal courts should apply § 2254 deference to state court decisions when deciding whether to grant a petitioner's request for a COA. *See* 537 U.S. at 336, 342; *see also Dockins v. Hines*, 374 F.3d 935, 937 (10th Cir. 2004) (noting that commentaries on *Miller-El* argue the Supreme Court "left open" the question of whether § 2254 deference applies to the preliminary evaluation of a petitioner's request for a COA). But in a concurrence, Justice Scalia observed that the Court's opinion applies § 2254's deferential standard to COA decisions under § 2253(c). He explained that "[t]he Court today imposes another additional requirement: A circuit justice or judge must deny a COA, even when the habeas petitioner has made a substantial showing that his constitutional rights were violated, if all reasonable jurists would conclude that a substantive provision of the federal habeas statute bars relief." *Miller-El*, 537 U.S. at 349–50 (Scalia, J., concurring). And the opinion of the Court suggested that an appellate court's COA determination under § 2253(c) must account for AEDPA deference. *Id.* at 336 ("We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason."). The Court also proceeded to incorporate § 2254 deference into its own COA analysis: "At [the COA] stage, however, *we only ask* whether the District Court's application of AEDPA deference, as stated in §§ 2254(d)(2) and (e)(1) . . . was debatable amongst jurists of reason." *Id.* at 341 (emphasis added).

In *Dockins*, the Tenth Circuit held that Justice Scalia's concurrence in *Miller-El* correctly "characterized the majority opinion as concluding that AEDPA deference is required for COA decisions." 374 F.3d at 937. We agree, based on both the

4

Supreme Court's COA analysis in *Miller-El* and its lack of disagreement with Justice Scalia's characterization of the Court's opinion. Moreover, Supreme Court precedent after *Miller-El* and *Dockins* support Justice Scalia's view that § 2254 deference to state court decisions is incorporated into our consideration of a petitioner's COA request. *See Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018) (per curiam) (holding that the circuit court erred in failing to grant a COA where "jurists of reason could debate whether [petitioner had] shown by clear and convincing evidence that the state court's factual determination was wrong"); *Buck v. Davis*, 137 S. Ct. 759, 777 (2017) (framing the COA inquiry in terms of "whether a reasonable jurist could conclude" that the petitioner would prevail under the standard of review that would govern "during a merits appeal").

Practical considerations noted by the Tenth Circuit in *Dockins* also support this interpretation. *See* 374 F.3d at 937–38 (outlining policy implications). If federal judges issued a COA whenever a petitioner presented a constitutional claim that was debatable on the merits under de novo review—but where deference to state court findings would otherwise require denial of a COA—appeals would proceed even when AEDPA-mandated deference would plainly foreclose habeas relief. We do not endorse such a futile exercise. As the Tenth Circuit aptly noted, that approach would encourage federal courts to comment on state cases that might have erroneously—but not *unreasonably*—decided constitutional questions. *Id*. at 937. "Any such statements of constitutional principles would surely be dicta, and the idea that federal courts ought to be in the business of ineffectually chastising our colleagues on the state bench runs directly counter to the principles of comity deeply embedded in our federal judicial

5

system." *Id.* at 937–38. Applying AEDPA deference to the COA decision avoids exercises in futility and respects comity.

Becker counters by citing our decision in *Pabon v. Superintendent SCI Mahanoy*, 654 F.3d 385 (3d Cir. 2011). But that case involved a dissimilar scenario. In *Pabon*, the district court dismissed the habeas petition as untimely without reaching its merits, so deference never applied to the state court's findings under § 2254. *See Pabon v. Mahoney* [sic], 2008 WL 249845, at *4 (E.D. Pa. Jan. 30, 2008), *rev'd in part*, *vacated in part by Pabon*, 654 F.3d at 387. We likewise declined to apply AEDPA deference when deciding whether to issue a COA. *Pabon*, 654 F.3d at 392 n.9. Because *Pabon* never reached the merits of the underlying claim as the result of a procedural bar, our decision there has little relevance to Becker's case. Where there is never a "threshold inquiry into the underlying merit of [the petitioner's] claims"—as in *Pabon*—federal district and appellate judges are not prompted to extend § 2254's deference to the state court's findings. *Miller-El* 537 U.S. at 327. *Pabon* states the general principle that it is premature at the COA stage to apply AEDPA deference to a comprehensive merits analysis. *Id.* at 392–93. It does not say that AEDPA is irrelevant to the COA inquiry or to our review of the debatability of the District Court's application of AEDPA. Indeed, *Pabon* considered the reasonableness of the state court's application of federal law in determining whether a COA should issue. *See id.* at 397–98. So § 2254's deferential standard played some role there in our COA inquiry.

For these reasons, we hold that AEDPA's deferential standard also governs our decision whether to issue a COA to a habeas petitioner seeking to appeal a district court's order to which § 2254's deferential standard applies.

6

## II

Having held that AEDPA's deferential standard applies to the decision whether to grant a COA, we turn to whether a COA should issue for Becker's habeas petition.[1] At issue is the admissibility of statements he made to police after his pregnant girlfriend, Allison Walsh, was shot to death on August 12, 2011. In an interview with police immediately after the shooting, Becker admitted he fired the handgun that killed Walsh and her unborn child. He said he only wanted to clean the gun and "play around" with it when the gun fired. *Becker v. Wetzel*, 2020 WL 4674118, at *2 (E.D. Pa. Aug. 12, 2020). Police advised Becker of his *Miranda* rights, which he waived before questioning.

Becker made additional statements to police during a follow-up interview on August 18, 2011, and his habeas petition challenged the admissibility of those statements. After discharge from a psychiatric hospital, police asked Becker to return to the Ephrata State Police Barracks to speak with them a second time. Becker came voluntarily, driven by his father. Two state police officers escorted Becker to an interview room, where he agreed to let police videorecord the interview. Police told Becker the interview was prompted by "problems with [Becker's] first statement to [them] and inconsistencies that [they] found from talking to [Becker], from the crime scene, and then other witnesses or, you know, friends, et cetera, through the investigation." *Id.* at *16. Police neither placed Becker in handcuffs nor arrested him. The door to the interview room was unlocked and police offered Becker drinks,

---

[1] The factual and procedural history is drawn largely from *Becker v. Wetzel*, 2020 WL 4674118 (E.D. Pa. Aug. 12, 2020).

7

cigarettes, and breaks.

Police again gave Becker *Miranda* warnings. Twice during the lengthy interview Becker potentially invoked his right to remain silent. Approximately one hour into the interview, Becker responded to questions about his handling of the gun and its safety features: "I don't know. I have nothing more to say 'cause no matter what I say, youse trying to make me something I'm not." *Id.* at *6. Investigators told Becker to relax, offered him a drink, and left the room for eight to nine minutes. A little over an hour later, Becker responded to a series of questions regarding his purportedly abusive history towards women: "OK. I'm done now." *Id.* But he never explicitly asked or attempted to leave the room, and police continued to question Becker.

At the end of the interview, police arrested Becker. They charged him with criminal homicide, 18 Pa. Cons. Stat. § 2501, and criminal homicide of an unborn child, 18 Pa. Cons. Stat. § 2603. A jury convicted Becker of "murder in the first degree for the death of Ms. Walsh and . . . murder in the third degree for the death of the baby." *Becker*, 2020 WL 4674118, at *8. He is currently in Pennsylvania state prison serving a life sentence, plus a 20 to 40-year consecutive sentence for the death of his unborn child.

Becker appealed his convictions and sentence seeking, *inter alia*, to overturn the denial of his motion to suppress the interview. *See Commonwealth v. Becker*, 2015 WL 7433059, at *1 (Pa. Super. Ct. Mar. 11, 2015). The Pennsylvania Superior Court affirmed, adopting without discussion the trial court's reasoning with respect to the motion to suppress. *Id.* The Pennsylvania Supreme Court rejected Becker's untimely petition for allowance of appeal.

8

Becker then turned to federal court, filing a petition for writ of habeas corpus. The District Court deferred to the state court's findings under AEDPA and denied Becker's counseled petition in a thorough opinion. *Becker*, 2020 WL 4674118, at *1. The District Court found "no basis" for a COA, as Becker did not carry his burden to show that "a reasonable jurist would disagree with the denial of the petition." *Id.* at *39.

III

Becker asks this Court to grant him a COA on grounds related to the admission of statements he made to police during his second interview on August 18, 2011. Becker unsuccessfully raised these same issues in state court. Becker claims police obtained statements during a custodial interrogation after he had invoked his right to remain silent. The debatability of that argument depends upon whether a federal court must apply § 2254's deferential standard to the state trial court's findings when considering a request for a COA.

Prior to trial, Becker moved to suppress the recording of his second interview, claiming his Fifth Amendment rights were violated. After a suppression hearing, the state trial judge denied Becker's motion, finding that his interview was noncustodial and that he had not unambiguously invoked the right to remain silent.

In his federal habeas petition, Becker again challenged the state trial court's refusal to suppress his statements and claimed the state court's denial of his motion to suppress was an unreasonable application of federal law. The District Court disagreed, concluding that the state trial court did not unreasonably apply federal law when it rejected Becker's

claims that he was in custody and invoked his right to remain silent. *Id.* at *17, *39. The Court deferred to the state court's factual findings that: "(a) Mr. Becker came to the Ephrata barracks voluntarily and (b) Mr. Becker never asked to leave or attempted to leave." *Id.* at *17. The Court added that the interview room had multiple exits, no lock, and two windows. *Id.* After reviewing a videorecording of the interview, the Court confirmed that Becker "never asked to leave" and "never tried to leave." *Id.* at *18. The District Court also deferred to the state court's factual finding that "at no time in the interrogation did Mr. Becker unambiguously or unequivocally state he wished to invoke his right to remain silent or right to counsel" and that "Becker received and understood his *Miranda* warnings and did not invoke his *Miranda* rights." *Id.* at *14, *19.

Independent of the state court's decision, the District Court flagged two facts that suggested the interview was custodial: its five-hour length and Becker's arrest after the interview. *Id.* at *18. Nevertheless, because "[t]here [we]re multiple breaks in the interview" and Becker "never asked to leave [nor] tried to leave," the District Court concluded that the state trial court had not misapplied federal law when it held that the interview was noncustodial and that Becker did not unambiguously invoke his right to remain silent. *Id.* The District Court suggested that, on de novo review, it might have found Becker's statement an unambiguous invocation of his right to silence. *Id.* at *22. Indeed, Pennsylvania and federal cases have, in other factual contexts, construed statements similar to "I'm done now" as unambiguous invocations of the right to remain silent. *See, e.g.*, *Commonwealth v. Lukach*, 195 A.3d 176, 185–90 (Pa. 2018) (construing the phrase "I'm done talking" as an unambiguous invocation of the right to remain

silent); *see also Becker*, 2020 WL 4674118, at \*21 nn.157–59 (collecting federal cases). But the District Court concluded that § 2254's deferential standard precluded it from granting habeas relief. *Becker*, 2020 WL 4674118, at \*22. Because a "reasonable jurist" could not disagree with the denial of Becker's petition, the District Court further explained, no COA was warranted. *Id.* at \*39.

We apply AEDPA's deferential standard to determine whether to issue a COA. We agree with the District Court that the state trial court's findings on custody and invocation of the right to remain silent were not "objectively unreasonable." *Id.* at \*15–22. Whether Becker was in custody during his interview and whether he invoked his right to remain silent were not free from doubt. But such close calls—decisions upon which reasonable minds might disagree—are essentially insulated from federal court reversal under AEDPA, which requires federal judges to defer to the reasonable state trial court findings on both issues. Under that deferential standard, Becker has no debatable claim that the state court unreasonably applied clearly established federal law or reached an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). So like the District Court, we will deny Becker a COA.

IV

For the reasons stated, we will deny Becker's request for a COA and dismiss his appeal for lack of jurisdiction.