[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12224
_____

D.C. Docket No. 2:18-cv-00014-RWS

CHRISTOPHER TEASLEY,

Petitioner-Appellee,

versus

WARDEN, MACON STATE PRISON,

Respondent-Appellant.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 3, 2020)

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal is about assessing juror bias based on a transcript of voir dire. Because there is more to human communication than the words we use, it can be hard for judges to glean meaning from a cold trial transcript. This difficulty is

especially pronounced in assessing the comments of unprepared laypersons during jury voir dire when "[t]he manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words." *Reynolds v. United States*, 98 U.S. 145, 156–57 (1878). And the problem is exacerbated in this case because the juror at issue, Juror Donaldson, did not *say* anything at all—he raised his hand.

The question for us is whether Juror Donaldson's gesture communicated that he was biased against Defendant Christopher Teasley and, if so, whether Juror Donaldson's indication of bias was so clear that a state court's fact-finding to the contrary must be set aside on federal habeas review. After careful consideration and with the benefit of oral argument, we cannot say that the state court erred in finding that Juror Donaldson was not biased against Teasley. Because the state court's reasonable fact-finding cannot be disturbed on federal habeas review, because the state court reasonably applied Supreme Court caselaw to Teasley's ineffective assistance of counsel claim, and because Georgia's juror non-impeachment evidentiary rule does not provide an alternative basis for habeas relief, the district court erred in granting Teasley's federal habeas petition. Accordingly, we reverse.

## I.    BACKGROUND

On a fateful day in 2005, Markez Jones found out that Christopher Teasley and his two brothers, Emory and Tyrone, had beat up Jones's cousin. Shortly

2

thereafter, Jones and Emory exchanged threats over the phone. Later that same day, Tyrone retrieved his gun, and the three Teasley brothers drove to a local pool hall. Someone at the pool hall called Jones to tell him that the Teasley brothers were there. Jones's uncle, James Riden, drove Jones to the pool hall, where Jones confronted Emory. Emory cursed at Jones, and Jones punched Emory in the jaw. Tyrone fired his gun at Jones but missed. As Jones fled, Tyrone fired again. This time, he fatally shot Riden. Christopher drove his brothers away from the scene.

### A.    *Voir Dire and Trial*

A grand jury indicted the Teasley brothers for the murder of Riden and the aggravated assault of Jones. The Teasleys were charged with malice murder (Count 1), felony murder (Count 2), two counts of aggravated assault (Counts 3 and 4), possession of a firearm during the commission of a crime (Count 5), and tampering with evidence (Count 6). Christopher Teasley and his two brothers each retained their own counsel and were tried jointly in state court.

Juror Donaldson was on the jury venire. After administering the oath to the venire, the court informed the potential jurors of the charges against the Teasleys. The court then asked the venire a series of questions designed to draw out any preconceived opinions potential jurors might have formed about the case:

> Have any of you for any reason formed or expressed any opinion in regard to the guilt or innocence of any of these Defendants? If you have, let that fact be known by raising your hand.

3

> Do any of you have any opinion about the guilt or innocence of any of these Defendants?
>
> [H]ave you any prejudice or bias resting on your mind either for or against any of these Defendants? If so, let that fact be known by raising your hand.
>
> [I]s your mind perfectly impartial between the State and each one of these Defendants? If your mind is not perfectly impartial, let that fact be known by raising your hand.

Juror Donaldson did not respond to any of these questions.

Later during voir dire, the state prosecutor asked whether potential jurors could commit to following the judge's instructions:

> Can I get a commitment from everyone here that you will follow the directions that the judge gives you and the instructions that the judge gives you on what the law is in this case? Can I get a promise from everyone? Is there anyone that cannot do that?

Juror Donaldson did not respond to those questions either.

Co-defendant Tyrone Teasley's attorney then conducted his examination of the panel. He began by asking a series of specific background questions, including whether any potential jurors owned guns. Juror Donaldson responded affirmatively, stating that he owned "shotguns, rifles, [and] pistols" that he used for "protection and sport." Counsel concluded by asking the potential jurors whether they could try the case impartially:

> [I]s there anything about either the nature of the charges or anything else that you've thought of since you've been sitting here so far that leads you to believe that you wouldn't be a fair and impartial juror in this case . . . ?

Juror Donaldson did not respond to the question.

Next, Co-defendant Emory Teasley's attorney conducted her examination. At the beginning of her voir dire, she asked the panel whether anyone was prejudiced against the defendants:

> Is there anyone here who feels that Mr. Teasley or any of these gentlemen are guilty because they're sitting at the defense table?

Juror Donaldson did not respond. Counsel for co-defendant continued her examination and eventually asked the panel:

> Is there anybody here who feels that in the case – in a murder trial where it's alleged was a shooting, is there anyone here who feels that you can't be fair and impartial in this case? Is that the type of a case that you just couldn't be fair on?

The transcript indicates that Juror Donaldson *raised his hand*. There were no follow-up questions.

Later, the prosecutor and defense counsel questioned individual jurors, including Juror Donaldson. The state prosecutor asked Juror Donaldson about a response in which he had indicated that a family member had been charged with a crime. After Juror Donaldson said the issue would not affect his ability to be fair, the prosecutor asked him no further questions. No member of the defense team followed up with Juror Donaldson. Defense counsel did not move to excuse him for cause or use a peremptory strike to remove him, and he was seated on the jury.

After the jury was seated, the trial court administered the "final oath" to the jurors. The oath required the jurors to promise to "well and truly" try the case and render a verdict based on the evidence:

> You shall well and truly try the issue formed upon this bill of indictment (or accusation) between the State of Georgia and (name of accused), who is charged with (here state the crime or offense), and a true verdict give according to the evidence. So help you God.

Ga. Code Ann. § 15-12-139.

After a multi-day trial, the jury found Teasley and his two brothers guilty on all counts.

### B.    Direct Appeal

Teasley obtained new counsel for his direct appeal. On appeal, Teasley requested relief on two grounds: (1) insufficient evidence to support his convictions for murder, aggravated assault, and possession of a firearm during the commission of a crime; and (2) insufficient evidence to support his conviction for evidence tampering. The Georgia Supreme Court affirmed Teasley's convictions but remanded the case for resentencing on a narrow issue unrelated to juror bias. *Teasley v. State*, 704 S.E.2d 800, 802 (Ga. 2010).

### C.    State Habeas Corpus Proceedings

Teasley filed a *pro se* habeas petition in state court, followed by numerous amendments. In the petition, Teasley requested relief on several grounds; none included juror bias. The court held an evidentiary hearing at which Teasley testified

and offered additional documentary evidence. Teasley's former appellate counsel did not testify, but the court admitted a transcript of her deposition upon written questions.

Six months later and after retaining an attorney to represent him at the state habeas proceedings, Teasley filed a motion to reopen the record and to amend his petition to "add only one 'new' ground for relief . . . that a biased juror served on Mr. Teasley's jury[,] . . . present[ing] a simple legal question[:] . . . whether Mr. Teasley's constitutional rights were violated by the presence of a biased juror on his jury." The court granted both motions over the state's objection. Teasley then filed an amended state habeas petition, alleging, among other things, that his appellate counsel was ineffective for not raising the presence of Juror Donaldson on direct appeal.

The court held a second evidentiary hearing, at which Teasley was allowed to present evidence in support of his additional claim. He introduced four exhibits and called each of the three defense attorneys from his trial to testify. Further testimony from Teasley's former appellate counsel was also admitted into evidence through a deposition transcript. Teasley made no attempt to present testimony from Juror Donaldson.

At the hearing, the defendants' trial attorneys explained that, because the Teasley brothers' defenses were not antagonistic, they conducted jury selection

collaboratively. Christopher Teasley's trial counsel recounted that, although he asked several questions of the venire panel, he also relied on the attorneys for Emory and Tyrone Teasley because they were more familiar with the jury pool. He testified that, after questioning the panel, all three defense attorneys met and reviewed the prospective jurors' responses. Emory Teasley's attorney testified that the team had considered Juror Donaldson a favorable juror for the defense. She had placed a "plus sign" by Juror Donaldson's name on her trial notes to mark him as a favorable juror. Her notes indicated that he owned guns and had been hunting. She explained that the defense attorneys had made a strategic decision to argue that Tyrone Teasley fired his gun in self-defense, and they were looking specifically for jurors who were not opposed to firearms.

The state habeas court denied Teasley's petition in 2016. The court agreed with Teasley that his appellate counsel performed deficiently. But the court held that Teasley's claim failed because there was not a reasonable probability that the outcome of his appeal would have been different if his appellate counsel had raised the juror bias issue on direct appeal. The court recognized that it would be an error not to excuse a juror "who answers questions during voir dire in a manner which unequivocally demonstrates partiality." But the court found that "the trial record does not demonstrate actual bias on the part of juror Donaldson." Instead, the court reasoned that "Donaldson's responses, and lack of responses, are equivocal." The

8

court held that it "need not address the issue of whether Juror Donaldson could have been compelled to testify in a post-conviction hearing" because it "must base its decision" on the record Teasley created. Based on this record, the state court found "that the single response from Donaldson cited by petitioner is insufficient" to establish bias.

The Georgia Supreme Court denied Teasley's application for a certificate of probable cause to appeal.

### D.    *Federal Habeas Corpus Proceedings*

Teasley filed a timely federal habeas petition against the Warden of Macon State Prison. A magistrate judge recommended that the petition be granted. The magistrate judge conceded that "a definitive showing of bias [was] impossible" in Teasley's case "because Donaldson's expression of bias was limited to raising his hand." But he nevertheless concluded that because "[t]he *only relevant evidence . . .* is [Donaldson's] indication of bias when he raised his hand in response to [the attorney's] question," that evidence was "the *only showing needed*" to support a finding of actual prejudice. The district court adopted the recommendation. In its order, the district court acknowledged that Teasley's claim "present[ed] a difficult question." But it held that "[e]ven if this Court were to agree with the state habeas [court] that we do not know whether Mr. Donaldson was or was not biased, caution dictates that Petitioner be given a new trial, and it is reasonably probable that the

Georgia Supreme Court would have agreed." The district court also sua sponte identified an "alternative basis" for granting the habeas petition in Georgia's jury non-impeachment statute, which it believed denied Teasley the opportunity to prove juror bias by precluding Juror Donaldson's testimony.

The Warden timely appealed.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's grant of a habeas corpus petition. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (citing *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005)). A petitioner is entitled to habeas relief only if his claim is meritorious and the state court's resolution of that claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts presented in the state court proceeding. 28 U.S.C. § 2254(d).

"Contrary to" means that the state court applied a different rule than one set forth by the Supreme Court, or that it decided a case differently than the Supreme Court has "on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's resolution of a claim is an "unreasonable application" of federal law when its decision (1) identifies the correct legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular petitioner's case, or (2) "either unreasonably extends a legal principle from [Supreme Court]

precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). An "unreasonable determination of the facts" occurs "when the direction of the evidence, viewed cumulatively, was 'too powerful to conclude anything but [the petitioner's factual claim],' and when a state court's finding was 'clearly erroneous.'" *See Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015) (alteration in original) (first quoting *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005); and then quoting *Wiggins v. Smith*, 539 U.S. 510, 529 (2003)).

## III.    DISCUSSION

Teasley argues that his appellate counsel was ineffective for failing to raise Juror Donaldson's presence on the trial jury. To succeed, he must show both that (1) his counsel's performance was deficient and (2) that deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Because the Warden concedes that Teasley's appellate counsel performed deficiently, the only issue is prejudice. The Warden's argument is straightforward. First, he argues that the state court reasonably found that Juror Donaldson was not actually biased against Teasley. Second, because the state court found insufficient evidence of actual bias, the Warden argues that the state court reasonably concluded that Teasley was not prejudiced by appellate counsel's failure to raise juror bias on direct appeal. Finally, the Warden argues that the operation of Georgia's juror non-

11

impeachment statute does not provide an alternative basis for granting habeas relief. We address each argument in turn.

### A.    The State Habeas Court's Ruling Was Not Based on an Unreasonable Determination of Fact under 28 U.S.C. § 2254(d)(2).

The first issue we must address is whether the state court unreasonably determined that Teasley did not prove that Juror Donaldson was actually biased against him. Because the Sixth Amendment provides the right to an impartial jury, "[d]emonstrated bias in the responses to questions on *voir dire* may result in a juror being excused for cause . . . ." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). To exclude a prospective juror for cause, a party must demonstrate that the juror in question exhibited "actual bias" by showing either an "express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993) (citing *United States v. Khoury*, 901 F.2d 948, 955, *modified*, 910 F.2d 713 (11th Cir. 1990)). The burden is on the challenger to show that the prospective juror was actually biased, having a "preconceived notion as to the guilt or innocence of an accused" of such "nature and strength" that "the juror [could not] lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). Whether an individual juror is biased is a question of fact. *Patton v. Yount*, 467 U.S. 1025, 1036–37 (1984).

12

Teasley argues—and the district court held—that the state court's finding that Juror Donaldson was not biased was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).[1] As evidence of bias, Teasley points only to the voir dire transcript and Juror Donaldson's hand raise in response to the question about impartiality. We hold that this nonverbal gesture is insufficient to justify overturning the state court's factfinding.

What Juror Donaldson meant to communicate by raising his hand is unclear. He gave no reason for raising it, and the question that he was responding to was not specific. The question asked about how Juror Donaldson "fe[lt]," not about any actual prejudice or bias. Even assuming he understood the question and raised his hand to respond affirmatively—signaling his feeling that he could not be fair and impartial—it is unclear which way his self-assessed partiality would have run or how it would have affected his ability to judge the case. *Cf. McDonough*, 464 U.S. at 558

---

[1] In addition to the deference owed to factual determinations under Section 2254(d)(2), Section 2254(e)(1) also commands that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." The way these two provisions interact in guiding a federal court's review of a state court's fact-finding is an open question in this Circuit. *Clark v. Att'y Gen., Fla.*, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016); *Landers v. Warden,* 776 F.3d 1288, 1294 n.4 (11th Cir. 2015). The Supreme Court has so far declined to rule on how, exactly, these two provisions interact. *See Brumfield v. Cain*, 576 U.S. 305, 322 (2015). And there appears to be a circuit split over their proper interpretation. *See Wood v. Allen*, 558 U.S. 290, 300–01 (2010). Because the Warden does not argue that the district court applied the incorrect standard of review to the state court's fact-finding, we leave that issue for another day.

(Brennan, J., concurring in judgment) (explaining that to be granted a new trial the petitioner must show that "the juror was biased against the moving litigant"). The question that elicited Juror Donaldson's response highlighted that this case was a murder prosecution involving a shooting. Juror Donaldson, a gun owner, might have been signaling his sympathy with the defense, whose strategy included arguing that the shooter fired in self-defense. Alternatively, he might have been signaling his unease about convicting a defendant of murder, knowing the lengthy sentence that could follow. We cannot say for certain what Juror Donaldson meant when he raised his hand, and, for that reason, we cannot say the state court's finding was unreasonable.

We also think it significant that no one who observed Juror Donaldson during trial expressed concern about his ability to be fair to the defendants. The question of juror bias, like credibility, is "largely one of demeanor." *Yount*, 467 U.S. at 1038. "Demeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying." *Id*. at 1038 n.14. And no one at trial viewed Juror Donaldson as biased against Teasley or favorable to the prosecution. Emory Teasley's attorney, for example, testified that she assessed Juror Donaldson to be a defense-favorable juror at trial based, in part, on his "body language." Teasley argues that the only reasonable interpretation of this record is that every trial participant—the judge, three defense lawyers, and the prosecution

14

team—ignored a juror's express admission of actual bias against a criminal defendant. But another reasonable interpretation is that Juror Donaldson's non-verbal hand-raise did not communicate anything of significance to the people who saw it.

Examining Juror Donaldson's response to this single question in light of the rest of the voir dire transcript creates even more ambiguity. Juror Donaldson declined to raise his hand in response to several similar questions about impartiality and bias. He also swore an oath under penalty of perjury—after raising his hand to counsel's question—that affirmed his ability to judge the case fairly and impartially. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors, of course, take an oath to follow the law as charged, and they are expected to follow it.") (citing *Adams v. Texas*, 448 U.S. 38 (1980)). The state habeas court balanced Juror Donaldson's single indication of possible bias against several signals of his ability to be fair and impartial, along with his sworn oath to that effect. It was not unreasonable for the state court to find that Juror Donaldson's responses, considered together, were equivocal and insufficient to show an express admission of bias.

Teasley cites several cases to support his argument that Juror Donaldson's single voir dire response amounts to an express admission of bias against him. But, unlike here, each of those cases features a verbal statement by a juror indicating possible bias—along with some explanation of such bias. *See Virgil v. Dretke*, 446

15

F.3d 598, 603–04, 612–14 (5th Cir. 2006) (concluding that two jurors' responses to direct questions established prejudice because one juror stated that close familial relationships with law enforcement would color his view of "repeat offenders," the other stated that his mother's mugging would color his view of the evidence, and both explicitly stated that they could not be fair and impartial); *Miller v. Webb*, 385 F.3d 666, 668–69, 675 (6th Cir. 2004) (finding actual bias where juror had known the surviving victim and sole eyewitness for several years through a Bible study, had sympathy for the victim, and would feel partial towards her); *Hughes v. United States*, 258 F.3d 453, 460 (6th Cir. 2001) (finding actual bias where juror had close familial ties and friendly relationships with law enforcement officers and said "I don't think I could be fair"). The state court justifiably distinguished these authorities, explaining that the jurors in these cases did much more than raise a hand in response to an ambiguous question. We therefore cannot say that the state court's decision was unreasonable.

### B.     *The State Court Did Not Unreasonably Apply* Strickland.

Because the state court's factfinding was not unreasonable, the question confronting us is whether the state court unreasonably applied the law when it held that there was not a reasonable—meaning more than merely conceivable—likelihood that Teasley's appeal would have been decided differently had appellate counsel raised the presence of Juror Donaldson. The answer is clearly no.

Teasley's claim of prejudice is governed by *Strickland*, which requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. A reasonable probability means "probability sufficient to undermine confidence in the outcome." *Id.* In a case like this one, prejudice cannot be presumed. *See, e.g.*, *Bell v. Cone*, 535 U.S. 685, 697 (2002); *United States v. Cronic*, 466 U.S. 648, 659–61 (1984); *Castillo v. Florida*, 722 F.3d 1281, 1286–89 (11th Cir. 2013). Instead, under *Strickland*'s prejudice standard, the "likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

The state court found Juror Donaldson's voir dire responses equivocal and insufficient to show actual bias. Lacking sufficient evidence of actual bias, the court reasonably concluded that Teasley had failed to show that appellate counsel's failure to raise the issue on appeal had prejudiced him. Indeed, if we accept the state court's factfinding—as we must—there is no reason to believe that the result of the appeal would have been different if appellate counsel had raised the issue. *Cf. Yount*, 467 U.S. at 1036, 1039–40 (denying habeas relief when jurors' statements were "ambiguous"); *United States v. Sammour*, 816 F.3d 1328, 1339 (11th Cir. 2016) (affirming conviction because the "district court did not clearly err in finding that Juror 9 was unbiased").

17

The district court held that, even though Juror Donaldson was not actually biased against Teasley, "caution dictates that Petitioner be given a new trial, and it is reasonably probable that the Georgia Supreme Court would have agreed." But Georgia courts have never reversed a conviction on facts like these. Although the Georgia Supreme Court has recognized the right to be tried by a fair and impartial jury as "a central safeguard to a fair trial in our system of criminal justice," *Lamons v. State*, 340 S.E.2d 183, 184 (1986), it has never held that this right is violated when a juror is not actually biased.

The district court relied on several Georgia Supreme Court decisions, but they are distinguishable. In *Lamons*, the state supreme court reversed a conviction where a juror "developed a unique relationship" with the state's chief prosecuting witness—an undercover officer who had participated in the drug transaction at issue—after she contacted him during trial to report that her ex-boyfriend was involved in illegal drug transactions unrelated to the ongoing trial. *Id.* And although the court in *Trim v. Shepard* encouraged judges to "err on the side of caution" when a juror responds equivocally to questions about impartiality, the court's focus was on cases where "there was a relationship between a juror and a lawyer, party, or witness that led the juror to express some doubt about his impartiality, even if the expression of doubt was equivocal." 794 S.E.2d 114, 117 (2016). Those circumstances are not present here, where no one has alleged any improper

18

relationship between Juror Donaldson and a lawyer, party, or witness that would have impaired his ability to judge Teasley's case.

For his part, Teasley cites one additional Georgia case in support of his prejudice argument, but it is even further distinguishable from the facts here. In *Scarpaci v. Kaufman*, the Georgia appellate court ordered a new trial where a juror not only raised her hand to indicate partiality, but also clearly explained that she was biased in favor of the defendants, one of which was a medical clinic where she had been a patient. 762 S.E.2d 172, 174 (2014), *overruled by Willis v. State*, 820 S.E.2d 640 (2018). Those facts are quite different from the circumstances presented here, where no one alleged any preexisting relationship between Juror Donaldson and any party to the case, and nobody ever asked him to explain why he raised his hand in response to the relevant question. The state court therefore did not unreasonably apply *Strickland* when it held that Teasley failed to establish a reasonable probability that his appeal would have been decided differently had appellate counsel raised the presence of Juror Donaldson.

C.    *Georgia's Juror Non-Impeachment Statute is not an Alternative Basis for Relief.*

The district court also held that Teasley is entitled to relief on an alternative basis—namely that Georgia's juror non-impeachment statute denied him the opportunity to prove Juror Donaldson's bias. The statute provides that "[u]pon an inquiry into the validity of a verdict . . . a juror shall not testify by affidavit or

19

otherwise nor shall a juror's statements be received in evidence" as to any matter discussed during deliberations or any matter influencing a juror's decision to assent or dissent from the verdict. Ga. Code Ann. § 24-6-606(b). We hold that the existence of this statute does not present an alternative basis for granting Teasley's petition.

In support of the district court's sua sponte ruling, Teasley argues that the state statute unconstitutionally prevented him from calling Juror Donaldson to testify about his voir dire responses. "[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215 (1982); *see also Remmer v. United States*, 347 U.S. 227, 229–30 (1954). Jurors sometimes testify at these post-trial hearings, just as they do during pre-trial voir dire. *See, e.g.*, *Smith*, 455 U.S. at 217 n.7; *Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 517 (10th Cir. 1998). The state habeas court held two evidentiary hearings on Teasley's post-conviction claims, but it never decided whether Juror Donaldson could have been compelled to supplement or explain his responses during voir dire. Instead, the state court reasoned that this evidentiary issue was irrelevant because Teasley had relied exclusively on the voir dire transcript.

We agree with the state habeas court. Although the parties disagree about how this evidentiary rule applies, we need not decide the issue. No matter how this statute applies to a post-conviction proceeding about juror bias, the district court erred when it granted a habeas petition on this ground.

20

As an initial matter, Teasley is not entitled to habeas relief on this ground for the simple reason that the state court never prevented Teasley from compelling Juror Donaldson's testimony. After he amended his state habeas petition to include claims of juror bias, the state habeas court held a second evidentiary hearing at which the lawyers for Teasley and his co-defendants testified. Teasley introduced transcripts of the entire voir dire, including Juror Donaldson's responses to general and individualized questioning. But Teasley never attempted to offer Juror Donaldson's testimony. There is no indication that Georgia's juror non-impeachment statute impacted his presentation at all. Teasley did not even plead this alternative basis for relief in his federal habeas petition. The hypothetical impact of a state evidentiary rule on a strategy that Teasley never explored does not undermine his conviction.

In any event, even if this evidentiary rule did preclude Juror Donaldson's testimony, the district court erred in granting Teasley's habeas petition on that ground. Federal habeas relief, as relevant here, is available only when a state court's decision is "contrary to" or an "unreasonable application" of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States" means "the holdings, as opposed to the dicta," of Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (internal quotation marks omitted).

21

At the time of the state court's decision in 2016, the Supreme Court had never held that a criminal defendant raising a claim of juror bias or ineffective assistance of counsel had a constitutional right to compel a juror's post-trial testimony—far from it. The Supreme Court had affirmed a criminal conviction over a Sixth Amendment challenge when the lower court excluded evidence of juror misconduct during deliberations. *See Tanner v. United States*, 483 U.S. 107, 127 (1987). And it had upheld the constitutionality of a juror non-impeachment rule where a juror was alleged to have lied during voir dire to conceal bias. *See Warger v. Shauers*, 574 U.S. 40, 50–51 (2014). Only after the state court's decision on review here did the Supreme Court recognize a narrow constitutional exception to the non-impeachment rule for when "a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant." *Pena-Rodriguez v. Colorado*, 137 S.Ct. 855, 869 (2017). As we have explained, that new rule "was neither 'dictated' [by precedent] nor 'apparent to all reasonable jurists' at the time" it was announced. *Tharpe v. Warden*, 898 F.3d 1342, 1345 (11th Cir. 2018). That new rule has no application to the facts of this case. Under the deferential standard we apply to the state court's judgment, we conclude that Georgia's jury non-impeachment statute is not a reason to grant Teasley's federal habeas petition.

22

## IV.    CONCLUSION

Teasley is not entitled to habeas relief. Accordingly, we **REVERSE** the judgment of the district court.

JORDAN, Circuit Judge, concurring in part and concurring in the judgment.

In a habeas case like this one, involving the alleged ineffective assistance of appellate counsel, the prejudice inquiry focuses on whether there is a reasonable probability of a different outcome on appeal had counsel performed competently. *See, e.g., Dell v. United States*, 710 F.3d 1267, 1274 (11th Cir. 2013). So to prevail Mr. Teasley has to show that, had counsel raised on appeal Juror Donaldson's non-verbal answer to the question concerning the inability to be fair and impartial in a murder case involving a shooting, there is a reasonable probability that a Georgia appellate court would have granted him a new trial.

If we were exercising de novo review of the prejudice question, I would agree with the district court that Mr. Teasley should be granted habeas relief. But AEDPA requires us to give deference to the prejudice determination of the Georgia habeas court, and I cannot say that its determination was unreasonable. As far as I can tell, there are no Georgia cases requiring the dismissal of a juror (and the granting of a new trial) under similar circumstances. And without such cases, it seems to me, Mr. Teasley is unable to overcome AEDPA deference.

With these thoughts, I join Parts I, II, and the first portion of III.C of the court's opinion (the portion holding that Mr. Teasley did not try to offer Juror Donaldson's testimony and did not raise the Georgia evidentiary rule as a basis for habeas relief). I otherwise concur in the judgment.